Per Curiam,
on petition for rehearing. If these lands were liable to satisfy the plaintiff’s debt, it cannot be correct to say, that they ought to be subjected to. a decree in equity, being a trust or equitable estate, and ought not to be subject by a fi. fa. If not liable at law, equity could not subject them merely because the estate was an equitable one. It could not, we think, subject an equity of redemption, or the trust of a term ; because equity ought not to extend the contract of the parties to subjects not looked to, or depended upon, when entered into, nor go beyond the law. It could only facilitate the remedies provided by the law for the attainment of a legal object; and it would be greatly inconvenient, if being liable, the fi. fa. would not reach * them, for the judgment is no lien upon them, and then, at any time after judgment, and before .a decree in equity, to subject a trust estate, the owner might make a valid sale, as the owner of a chattel may, before fi. fa. and after judgment. He might defeat the creditor, which he could not do if bound by the fi. fa. If the cestui que trust, before the fi.fa., sells the trust by assignment of the bond for title, or otherwise, the purchaser at sheriff sale is in no worse situation than if he purchase lands in fee, which have been sold before the judgment, and without coming to his knowledge. It is true, that the act of 29th Charles II. has a clause, directing the creation of trusts to be in writing ; but it is also true, that resulting trusts are excepted in that clause ; and tliat the clause for subjecting trusts to execution uses the words, “ in any manner or wise subject to a *47 trust,” which comprehends all trusts, and all unexecuted uses, no matter whether arising by express declaration or resulting by implication of law. And so it is laid down, 2 Bl. Com. 332. If all real estates liable in England to be extended, are liable to be sold by the 5th of George II. ch. 7, then it is no objection that the trust is implied by law. Suppose, however, this clause of the act of 29th of Charles II. not to be in force here ; what shall we make of the words real estate in the statute of George the II. “ Houses, negroes, lands, tenements, hereditaments, and real estate,” says the statute, shall be liable. Does not the term real estate signify something different from lands, tenements, and hereditaments? And what could it be but trusts unexecuted by the statute' of Henry VIII. ? Maledicta est interpretatio qucB eorrumpit textum, as every interpretation does which either makes the words real estate signify the same that was already expressed by the preceding words, or not comprehend trusts, when none but these are left out of the scope of former terms. Trusts, then, or unexecuted uses, were liable by this act without the aid of the 29th of * Charles the II., and might be sold by a ft. fa. It is agreed that 1777, ch. 1 § 28, where process against goods and chattels is extended to lands and tenements also, was not meant of executions issued by justices of the peace, as appeared by § 69, but of process by attachment, to ■include the real estate of absentees. We need not dwell upon this doubt, for certainly this is a clear position, that executions are, by the same clause, also directed to issue against lands and tenements which did so formerly, and that must have been under the act of George the II. in the year 1732, and extended to all cases of liability under that act. We cannot perceive any reason, therefore, for changing the opinion before given upon this point. Next, as to the second ft. fa. not having been produced, but only recited in the copy of the record read to the court. Will the court require that which it is impossible to produce, founding itself upon that regular practice which the English books and cases are founded upon, and which require that, which by their practice, does exist? and shall we, by adhering to such requisitions, destroy all the sales made under such irregular practice ? Or, shall we take notice of it, and know judicially that certain things, if required, cannot be had, and therefore do without them, for the sake of realizing sales made under the authority of the law, and of the courts of justice by the *48 proper officers ? We think the latter course ought to be adopted; and we know that it has been usual to issue an alias fi. fa., and that too, by writing alias on the back of the, first, without making out a new one. The sheriff could not refuse to execute it; he would be fined for such refusal. He was bound to sell under it; the clerk, therefore, can only set out one verbatim in his copy of the record; that he has done in the present instance. Suppose A obtain a judgment against B, thereby binding his real estate, and B sell his land to C, and then A take out execution, and the lands are sold to D, who sues C to * recover the lands ; he must produce the deeds, the fi.fa., and the judgment to show a relation of his title to the judgment, which was precedent to C’s deed; and suppose this was a fi. fa., from the courts of North Carolina before our separation, or of the Franklin government, no judgment was ever entered. None can be produced. Will we not take notice of it, what in those days passed for it ? If not, we would destroy this and many other sales made in those times, both of real and personal estate. In this case, also, there is but little danger of being deceived. The return to the alias fi. fa. is set out verbatim, not by recital, and it is stated verbatim also, in the venditioni ex-ponas, not historically by the clerk; that seems so near to the production of the fi. fa itself as to leave no doubt of its having existed in some shape or other. There is no cause, therefoi’e, for changing our opinion on this point, and the petition of a rehearing must be dismissed.
See Russell v. Stinson, 3 Hay. 1, sub fin.